UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- X
AMERICO JIMENEZ,

                      Plaintiff,

  -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security

                      Defendant.
------------------------------------------------------- X

**MEMORANDUM AND ORDER**

Civil Action No. 16-CV-3972

**APPEARANCES:**

**For Plaintiff:**

Christopher J. Brown, Esq.
54 Cobblestone Drive
Shoreham, New York 11786

**For Defendant:**

Richard P. Donoghue
United States Attorney, Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
By:    Dara Olds, AUSA

**HURLEY, Senior District Judge:**

       Plaintiff Americo Jimenez ("Plaintiff") seeks judicial review under 42 U.S.C. § 405(g) of the Commissioner of Social Security's ("Defendant") determination that Plaintiff is not disabled within the meaning of the Social Security Act (the "Act"), and therefore not entitled to disability insurance benefits. Presently before the Court are Plaintiff's motion and Defendant's cross-motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the

reasons presented below, Defendant's cross-motion is denied, and Plaintiff's motion is granted to the extent that the case is remanded for further proceedings consistent with this opinion.

## BACKGROUND

### I.     Procedural History

On April 25, 2013, Plaintiff, then fifty-one years old, applied for disability insurance benefits. (Tr. 63, 64.) Plaintiff's application was denied and he requested a review before an Administrative Law Judge ("ALJ"). (Tr. 69, 70-73, 79-80.) On January 8, 2015 a hearing was held before ALJ Jacqueline Haber Lamkay. (Tr. 35.) By Notice of Decision Unfavorable, dated February 26, 2015, the ALJ denied Plaintiff's claim for disability. Plaintiff appealed that decision and on May 12, 2016, the Appeals Counsel denied review. This action followed.

### II.    Plaintiff's Relevant History[1]

Plaintiff was born in the Dominican Republic in 1961. Although he only has a fourth-grade education, he testified that he is able to read and write some English, watches television in English, and reads English language newspapers in order to improve his language skills. In his disability application, he indicated that he can follow both written and spoken instructions. He can pay bills, count change and handle a savings account. He did use an interpreter to testify before the ALJ. (Tr. 44-45, 235.)

Prior to 2002, Plaintiff worked as a cook at a restaurant where he also held managerial responsibilities. (Tr. 50.) Between 2002 and 2010, Plaintiff worked as a "light cook" at another pizzeria. (Tr. 49.) At this pizzeria, Plaintiff was eventually promoted to a managerial position. (Tr. 49.) From 2010 to 2013, Plaintiff worked as a cook in an Italian restaurant where he was in

---

[1] It is unnecessary for Plaintiff's medical evidence to be summarized, as it is irrelevant to the issues at hand.

charge of managing the kitchen. (Tr. 48-49.)  He supervised the other kitchen employees and had the authority to hire and fire them. (Tr. 49.) His position required him to use machines, tools, and equipment, as well as the writing of reports. (Tr. 223.) He also held a 10% ownership interest in the restaurant. (Tr. 15, 201).

In February 2013, the Italian restaurant terminated Plaintiff's employment. (Tr. 16.) Plaintiff alleges that on the day he was terminated, he started experiencing intermittent pain in his hands, lower back, and legs, as well as occasional swelling of his feet. (Tr. 16, 46, 221.) Between February 2013 and when he filed for disability insurance benefits, Plaintiff unsuccessfully attempted various types of work.  (Tr. 14.) According to Plaintiff', he was unable to work for more than twelve days due the pain and swelling. (Tr. 46, 221.)

## DISCUSSION

**I.    Standards of Review**

   **A.    Review of the ALJ's Decision**

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Court may set aside a determination of the ALJ only if it is "based upon legal error or is not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks and citation omitted).  "Substantial evidence is 'more than a mere scintilla,' and is 'such relevant evidence as [a] reasonable mind might accept as adequate to support a conclusion.'"  *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed

to the decision, so long as the record 'permits [the Court] to glean the rationale of [his or her] decision.' " *Cichocki v. Astrue,* 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 337, 340 (E.D.N.Y. 2004)

Furthermore, the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. § 405(g), and thus, the reviewing court does not decide the case de novo. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks and citation omitted). Thus, the only issue before the Court is whether the ALJ's finding that Plaintiff was not eligible for disability benefits was "based on legal error or is not supported by substantial evidence." *Rosa*, 168 F.3d at 77.

### B. Eligibility for Disability Benefits

To be eligible for disability benefits under the Social Security Act (the "SSA"), a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA further states that this impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id*. § 423(d)(2)(A).

The SSA has promulgated regulations prescribing a five-step analysis for evaluating disability claims. *See* 20 C.F.R. § 404.1520. This Circuit has described the procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next

considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa,* 168 F.3d at 77 (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)). The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that the claimant is capable of working. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

The determination of whether there are jobs in the national economy that a claimant is capable of performing depends on the claimant's RFC, age, education, and work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a). Generally, the rules contained in 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grid Rules" or "Appendix 2") direct a finding of disabled or nor disabled. 20 C.F.R. § 404.1569; 20 C.F.R. Pt. 404, Subpt. P, Appendix 2 § 200.00(a). The rules in Appendix 2 reflect "major functional and vocational patterns" of the jobs existing in the national economy according to the Dictionary of Occupational Titles ("DOT").[2] 20 C.F.R. § 404.1569. However, the rules contained in Appendix 2 "do not apply if one of the findings of fact about the person's vocational factors and residual functioning capacity is not the same as the corresponding criterion of a rule." In such cases, all relevant factors are considered "in

---

[2] Although the Act "contemplates that disability hearing will be individualized determinations based on evidence adduced at a hearing," the use of Appendix 2 is not inconsistent with the Act because "the regulations afford claimants ample opportunity both to present evidence relating to their own abilities and to offer evidence that the guidelines do not apply to them." *Heckler v. Campbell*, 461 U.S. 458, 467 (1983).

accordance with the definitions and discussions under vocational considerations." 20 C.F.R. § 404.1569.

II.     **The ALJ's Decision**

Applying the five-step analysis enumerated in 20 C.F.R. § 404.1520, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 3, 2013. (Tr. 14.) Proceeding to step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbrosacral spine with lumbar radiculitis and lumbar spine disc protrusions and obesity. (Tr. 15.) At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16.)

Prior to proceeding to the next step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he cannot climb ladders, ropes, or scaffolds, is able to only occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl; cannot perform work requiring reading or writing English for performance of work tasks; and must be afforded the opportunity for brief one or two minute changes of position every half-hour. At step four the ALJ found that Plaintiff was unable to perform his past relevant work as a cook helper or cook, which are considered unskilled and skilled respectively.  Proceeding, the ALJ found that  (1) on the alleged disability onset date Plaintiff was "an individual closely approaching advanced age" (citing 20 C.F.R.§ 404.1563); (2) Plaintiff "has a limited education and is able to communicate in English" (citing 20 C.F.R. § 404.1564) and (3) "transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is

'not disabled' whether or not [he] has transferable job skills" (citing SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). (Tr. 21-22). "Considering Plaintiff's age, education, work experience, and residual functional capacity," the ALJ found that there are jobs in significant numbers in the national economy Plaintiff can perform and thus a finding of not disabled was appropriate. (Tr 23-24.)

### III. The Parties' Arguments

In support of his motion, Plaintiff contends that the "Grid Rules" direct a finding that Plaintiff is disabled because he meets the criteria of Rule 202.09. (Pl.'s Mem. in Supp. at 8.) According to Plaintiff, the ALJ found he was illiterate because the ALJ limited Plaintiff's ability to work to jobs that did not require reading or writing in English to perform work tasks, Plaintiff testified via an interpreter at the administrative hearing, and Plaintiff's fourth-grade education constitutes marginal education under 20 C.F.R. § 404.1564. (*Id.* at 8-9; Pl.'s Reply at 1.) Plaintiff argues he has a history of unskilled work because the vocational expert ("VE") "failed to provide an explanation as to how [Plaintiff's past] work was in fact skilled." (Pl.'s Mem. in Supp. at 8.) Given his illiteracy and unskilled prior work, Plaintiff argues he fall within Grid Rule 202.09 and therefore a finding of disabled is dictated.

Alternatively, Plaintiff contends that the VE who testified at the hearing failed to identify and explain the conflict between his testimony and the Dictionary of Occupational Titles ("DOT"). (Pl.'s Mem. in Supp. at 10.) The VE identified three occupations that Plaintiff could perform based on Plaintiff's RFC to perform light work with limitations: produce weigher, DOT 299.587-010; scale operator, DOT 555.687-010; and sealing-machine operator, DOT 690.685-154. (Tr. 22.) Plaintiff notes that the VE did not disclose that, contrary to Plaintiff's vocational abilities, all three occupations require reading and writing in English according to their Language

Development level of the General Education Development ("GED") Scale of the DOT. (Pl.'s Mem. in Supp. at 9-10.) According to Plaintiff, the ALJ could not rely on this testimony because the VE did not disclose the conflict. (*Id.* at 10.) Therefore, Plaintiff asserts that Defendant did not meet the burden at the fifth step of the evaluation. (*Id.* at 10-11.)

Defendant responds that Rule 202.09 does not apply, because the ALJ found that Plaintiff is literate, there is substantial evidence to support the ALJ's determination of Plaintiff's literacy and the VE's testimony constitutes substantial evidence that Plaintiff had a history of skilled work. (Def.'s Mem. in Supp. at 11-12.) Although the ALJ limited Plaintiff's ability to work to jobs that do not require reading or writing in English for the performance of work tasks, Defendant argues that is not the same as finding him illiterate and there is substantial evidence to support the ALJ's finding that Plaintiff can read, write, and communicate in English. (*Id.* at 10.) Defendant also argues that Rule 202.09 does not apply because the VE testified that under the DOT Plaintiff's prior work as a cook is classified as skilled work. (*Id.* at 12.) Finally, Defendant maintains that the VE's testimony satisfied the Commissioner's burden because there was no conflict between the VE's testimony and the DOT that the VE was required to disclose under SSR 00-4p, 65 Fed. Reg. 75759 (Dec. 4, 2000). (Def.'s Mem. in Supp. at 12-13.) According to Defendant, SSR 00-4p only requires a VE to identify and explain conflicts between his testimony and the specific vocational profile ("SVP") division of the DOT, not the GED division. (*Id.* at 12.)

IV. **Application of the Appendix 2 Grid Rules**

The essence of Plaintiff's first argument is that the ALJ's determination that Plaintiff is not disabled under Appendix 2 Rule 202 is not supported by substantial evidence because, in limiting his RFC to work that did not require reading or writing for work tasks, the ALJ found

Plaintiff was illiterate and also failed to determine whether his prior work history included skilled work.[3] Upon a complete review of the record, the Court finds that Grid Rule 202.09 does not apply.

### A. Grid Rule 202.09 Does Not Apply

To be classified as illiterate, a claimant must be unable to "read or write a simple message such as instructions or inventory lists." 20 C.F.R. § 404.1564(b)(1). According to this definition, the standard of literacy is low and "the question is only whether the plaintiff is so deficient in his ability to read and write that he cannot obtain even an unskilled job." *Gross v. McMahon*, 473 F. Supp. 2d 384, 389 (W.D.N.Y. 2007) (citing *Glenn v. Sec'y of Health & Human Services*, 814 F.2d 387 (7th Cir. 1987) (Posner, J.)).

Plaintiff argues that the ALJ found Plaintiff is illiterate when she limited Plaintiff's ability to perform light work to work that does not require reading or writing in English for the performance of work tasks. (E.g., Pl. Reply at 1.) However, that limitation was part of the ALJ's RFC determination, not a determination of literacy, and was made "giving him the benefit of every doubt" as he "indicated that he is more comfortable communicating in Spanish."

In her decision, referencing 20 C.F.R. § 404.1564, the ALJ found that Plaintiff "has a limited education and is able to communicate in English." That regulation provides as follows:

> (a) General. Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability. However, if you do not have formal schooling, this does not necessarily mean that you are uneducated or lack these abilities. Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education. Your daily activities, hobbies, or the results of testing may also show that you have significant intellectual ability that can be used to work.

---

[3] Plaintiff does not contend that he is unable to communicate in English. (Pl.'s Mem. in Supp. at 8.)

(b) How we evaluate your education. The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education. In evaluating your educational level, we use the following categories:

(1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

(2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

(3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

(4) High school education and above. . . .

(5) Inability to communicate in English. Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

(6) Information about your education. We will ask you how long you attended school and whether you are able to speak, understand, read and write in English and do at least simple calculations in arithmetic. We will also consider other information about how much formal or informal education you may have had through your previous work, community projects, hobbies, and any other activities which might help you to work.

20 C.F.R. § 404.1564.

As evidenced by § 404.1564, a finding of either limited, marginal or high school+ education is antithetical to a finding of illiteracy. Here, specifically referencing that regulation, the ALJ found that Plaintiff's education was marginal and therefore did not find that he was illiterate. There is ample evidence to support that conclusion. Plaintiff testified at the hearing that "he is able to read and write some English," "watches TV in English" and "reads English language newspapers in order to improve his language skills." In the questionnaire that he completed on June 5, 2013, he indicated that he is able to follow *written* and spoken instructions, pay bills and handle a savings account. (Tr. 235, 238.) He also reported that his last employment required the "writing of reports." (Tr. 223.) In the second face-to face interview with a Social Security Administration Field Office, the interviewer indicated that Plaintiff had no issues with coherency, understanding, talking or answering and there is no indication that there was an interpreter at that interview. (Tr. 229.) Also, Plaintiff completed a report of his activities of daily living in English. (Tr. 231-39.) Finally, as the ALJ noted, Plaintiff's "English language skills have been sufficient for his long career as a restaurant chef . . . ." (Tr. 21.)

Further, while a fourth grade education is "generally" considered marginal, the ALJ's determination that Plaintiff's education is "limited" is supported by Plaintiff's testimony that he was in charge of the kitchen at two of the restaurants he worked at, that at one of them he supervised other employees, including hiring and firing them, his ownership in a restaurant and his ability to pay his bills, as well as the VE's testimony that the SVP for a cook is seven. *See* 20 C.F.R. § 404.1564(a) ("Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education.")

Turning to the Medical Vocational Guidelines, Table 2 applies to RFC limited to light work. Each of the Grid Rules takes into account a claimant's "age" "education" and "previous work experience" Depending on the applicable categories, a decision of "disabled" or "not disabled" is dictated. Rules 202.09 to 202.15 apply to individuals who are closely approaching advanced age. Specifically, Rule 202.09 applies to those whose education is found to be "illiterate or unable to communicate in English" and whose previous work experience is "unskilled or none" and directs a finding of disabled. Rule 202.10 applies to individuals whose education is found to be "limited or less – at least literate and able to communicate in English," with previous work experience that is "unskilled or none" and directs a finding of "not disabled." Rules 202.11 and 202.12 direct a finding of disabled for individuals whose education is "limited or less" and whose previous work experience was "skilled or semiskilled," whether or not the skills are transferable.[4] In other words, with respect to individuals who are closely approaching advanced age, Table 2 directs finding of disabled only for those individuals "who are illiterate or unable to communicate in English."

As set forth above, the ALJ's determination that Plaintiff's education is "limited" and "is able to communicate in English," which conclusion is supported by substantial evidence, is antithetical to a determination of illiteracy. Accordingly, the ALJ did not err in not applying Rule 202.09.[5]

### B. Substantial evidence supports the ALJ's finding that Plaintiff has a history of skilled work

The Grid Rules also consider the skill level of a claimant's prior relevant work experience important to the determination of whether there are jobs available in the national

---

[4] Rules 202.13 to 202.15 apply to individuals whose education is "high school graduate or more" and therefore need not be discussed.
[5] As noted above, if either of Rules 202.10, 202.11 or 202.12 apply, a finding of not disabled is dictated.

economy that the claimant is capable of performing. 20 C.F.R. § 404.1565; 20 C.F.R. Pt. 404, Subpt. P, App. 2., Table No. 2. A claimant's prior relevant work experience is assessed by looking at the skills required by the claimant's previous occupation and the degree to which those skills will transfer to a new occupation. 20 C.F.R. § 404.1565; SSR 82-41, 1982 WL 31389 at *1 (1982). Both skill level and transferability are issues for the ALJ to decide. SSR 82-41 at *4. A skill is defined as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level." *Id.* at *2. Transferability "means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." *Id.*

There are three levels of skills classifications: unskilled, semiskilled, and skilled. 20 C.F.R. § 404.1565; 20 C.F.R. Pt. 404, Subpt. P, App. 2., Table No. 2. Relevant here is unskilled and skilled work. Unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job" within thirty days and requires "little specific vocational preparation and judgment." 20 C.F.R. § 404.1568(a). Skilled work, on the other hand, "requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. *Id*. § 404.1568(b).

The ALJ, when determining the skill level and transferability of a claimant's prior work experience, "should consult vocational reference sources," including the DOT, when the skill level of the job is not apparent. SSR 82-41 at *4. Classification of work by SVP level under the DOT as skilled or semi-skilled constitutes substantial evidence that the past work was skilled or semi-skilled. *Chichlow v. Shalala*, 1994 U.S. Dist. LEXIS 4611 at *25-26 (S.D.N.Y. Apr. 12,

1994) (holding there was substantial evidence to support the ALJ's determination that the plaintiff's past work was skilled or semi-skilled when, according to the DOT, the plaintiff's previous work carried an SVP level of seven). "Unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT. SSR 00-4p; *Day v. Astrue*, 2011 U.S. Dist. LEXIS 41738, n.5 (E.D.N.Y. Apr. 18, 2011).

Here, Plaintiff's contention that he had no history of skilled work, (Pl.'s Mem. in Supp. at 9), and that "the ALJ ultimately reached no factual conclusions regarding this issue," (Pl.'s Reply at 2), is contradicted by the record. The ALJ specifically referenced the VE's testimony regarding Plaintiff's past relevant work as a cook as being "skilled." (Tr. 21 ("The claimant has past relevant work as a cook helper (DOT 317.687-010) and cook (DOT 213.361-014) which [the VE] testified are medium jobs in exertional terms that are unskilled (with a SVP of 2) and skilled (with a SVP of 7) respectively.") The testimony that a cook has a SVP of 7 under the DOT constitutes substantial evidence. *Chicklow*, 1994 U.S.Dist. LEXIS 4611, at 25-26. Categorizing his past work as a cook as skilled is also supported by Plaintiff's report that his work at the Italian restaurant involved the use of machines, tools and equipment, required the writing of reports, as well as that he ran the kitchen and he supervised ten employees. (Tr. 223)

In sum, the Court finds Plaintiff's argument that the ALJ was directed by Rule 202.09 to find Plaintiff disabled is unpersuasive. The ALJ found that Plaintiff was literate and had a history of skilled work and the ALJ's findings of fact are supported by substantial evidence and no legal error was committed.

## V. Vocational Expert's Testimony

The essence of Plaintiff's second contention is that the ALJ applied the wrong legal standard by relying on the VE's testimony when the VE neither identified that his testimony conflicted with the DOT nor provided a reasonable explanation for the conflict. As such, the Court will review the ALJ's reliance on the VE's testimony *de novo*. *Townley*, 748 F.2d at 112. For the reasons set forth below the court agrees that the VE's testimony conflicted with the DOT and, because the VE failed to identify and explain the conflict, remand for further development of the record is required.

At the fifth step of the evaluation, the burden shifts to the Commissioner to show "a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his or her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). To determine whether such occupations exist in the national economy, the ALJ "will take administrative notice of reliable job information" listed in, among other publications, the DOT. *Id.* § 404.1566(d). Additionally, the Commissioner may elicit testimony from a VE to prove there are jobs in the national economy that the claimant can perform. *Id.* § 404.1566(e).

VE testimony amounts to substantial evidence that jobs exist in the national economy the claimant can perform only when three conditions are satisfied. First, "[t]he ALJ must pose hypothetical questions to the [VE] which reflect the full extent of the claimant's capabilities and impairments to provide a sound basis for the [VE's] testimony. *Sanchez v. Barnhart*, 329 F. Supp. 2d 445, 449 (S.D.N.Y. 2004) (citing *De Leon v. Sec'y of Health & Human Serv.*, 734 F.2d 930, 936 (2d Cir. 1984); *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). *See also Lugo v. Chater*, 932 F. Supp. 497, 504 (S.D.N.Y. 1996) ("Proper use of vocational testimony

presupposes . . . a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform."). Second, the ALJ has an affirmative duty to inquire into whether the VE's testimony conflicts with the DOT. SSR 00-4p, 65 Fed. Reg. 75759 (Dec. 4, 2000) ("At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is. . . consistency [between the VE's testimony and the DOT]."). And third, where the VE identifies an apparent conflict, the VE must provide "a reasonable explanation for the conflict." *Id.*; *cf. Pearson v. Colvin*, 810 F.3d 204, 208-209 (4th Cir. 2015) (holding that the ALJ must independently identify apparent conflicts even when the VE fails to do so).

Here the ALJ presented to the VE a hypothetical reflective of the RFC she ultimately determined for Plaintiff. (Tr. 22.) The ALJ also asked the VE if his testimony was consistent with the DOT. (*Id.*) Notwithstanding Plaintiff's limitation to work which does not require reading or writing in English, the VE did not identify that all the jobs he testified Plaintiff could perform require reading and writing in English under the General Education Development ("GED") Scale Language Development level of the DOT. (Tr. 61.) The parties dispute whether this conflict constitutes the type of conflict that the VE is required to identify under SSR 00-4p.

### A. A conflict between the vocational expert's testimony and Language Development level of the General Education Development Scale of the Dictionary of Occupational Titles is a conflict within the meaning of SSR 00-4p.

Conflict between VE testimony and the GED Scale Reasoning Development level of the DOT constitutes a conflict requiring a reasonable explanation before the ALJ may rely on it under SSR 00-4p.[6] *See e.g.*, *Roos v. Astrue*, 2008 WL 2309166 at *19 (S.D.N.Y. June 4, 2008)

---

[6] The GED Scale of the DOT "embraces those aspects of educations (formal and informal) which are required of the worker for satisfactory job performance." DOT 979.687-034. The GED Scale is subdivided into three divisions: reasoning development, mathematical development, and language development. *Id.*

("The [VE's] description of the reasoning level for the jobs he testified Roos could perform is consistent with the ALJ's hypothetical."); *Day v. Astrue*, 2011 WL 1467652 at *18 (E.D.N.Y. Apr. 18, 2011) (remanding case where ALJ did not address a conflict between the GED reasoning level of the jobs listed in the VE's testimony that was higher than the reasoning level the claimant was capable of performing based on the ALJ's limitations); cf. *Graves v. Astrue*, 2102 U.S. Dist. LEXIS 144024 at *34-35 (W.D.N.Y. Oct. 4, 2012) ("District courts in this Circuit have differed as to whether a [GED] reasoning level of 2 conflicts with a hypothetical limiting the claimant to simple, routine, and repetitive tasks.").

Moreover, several circuit courts have recognized that inconsistencies between a VE's testimony and the GED Scale Language Development division of the DOT constitute conflict under SSR 00-4p. *See e.g.*, *Rholetter v. Colvin*, 639 Fed. App'x 935, 938 (4th Cir. 2016) (holding the ALJ erred by relying on the VE's testimony when the VE failed to explain the conflict between the claimant's limitation to reading at a first- or second-grade level and the jobs identified by the VE which require a higher Language Development level); *Givens v. Colvin*, 551 Fed. App'x 855, 863 (7th Cir. 2013) (holding there was no conflict between the Language Development level required by the occupations the VE testified the claimant could perform and the claimant's language development level under the DOT).

Here, there was a conflict between the VE's testimony and the DOT regarding the GED Scale Language Development level of the DOT. Although the ALJ found that Plaintiff was capable of performing light work, the ALJ limited Plaintiff's ability to perform light work to, *inter alia*, work that does not require reading or writing for the performance of work tasks. (Tr. 16.) The VE testified that Plaintiff was capable of performing three different jobs: produce weigher, DOT 299.587-010; scale operator, DOT 555.687-010; and sealing-machine operator,

DOT 690.685-154. Under the DOT work as a produce weigher is classified as Language Development level one. DOT 299.587-010. A Language Development level one means that the person can "recognize the meaning of 2,500 two-or-three syllable words," "read at a rate of 95-120 words per minute," and "print simple sentences containing subject, verb, and object, and a series of numbers, names, and addresses. DOT 299.587-010. Work as a scale operator and sealing-machine operator are classified as Language Development level two. A Language Development level two requires that the person have a "[p]assive vocabulary of 5,000-6,000 words," and the ability to [r]ead at [a] rate of 190-215 words per minute," and write "compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs." DOT 690.685-154; DOT 555.687-010. Based on the reading and writing requirements of Language Development levels one and two, occupations at those levels conflict with the Plaintiff's restriction to work that does not require reading or writing.

Defendant maintains that the SSA "does not consider the GED ratings and relies instead on the SVP, or skill level, portion of the DOT." (Def.'s Mem. in Supp. at 12-13.) The Court finds this argument unpersuasive. Although Defendant cites SSR 00-4p as support for this position, there is no language within SSR 00-4p in support of the position. Under SSR 00-4p, ALJs "may not rely on evidence provided by a VE . . . if that evidence is based on underlying assumptions or definitions that are inconsistent with [the SSA's] regulatory policies or definitions." SSR 00-4p at 75760. SSR 00-4p further provides examples of conflicts that are inconsistent with the SSA's regulatory policies or definitions, including conflicts between the SVP component of the DOT. *Id.* But, SSR 00-4p merely provides examples of conflicts; there is no language in the regulation to suggest the list of examples is exclusive.

Defendant also cites *Ferguson v. Colvin*, 09-CV-697 (W.D.N.Y. July 30, 2010), in support of the position that only conflict between VE testimony and the DOT regarding the SVP Scale constitutes conflict under SSR 00-4p. (Def.'s Mem. in Supp. at 12-13.) *Ferguson* is distinguishable, however, as there the VE's testimony identified and then cleared up the alleged conflict between the reasoning level of the jobs identified as stated in the DOT and the hypothetical on which the VE based his opinion. *Ferguson*, slip. Op. at 12-13. Here, the VE neither identified the conflict nor provided an explanation for why Plaintiff was capable of performing the three cited jobs.

> B. **The unexplained conflict between the vocational expert's testimony and Dictionary of Occupational Titles requires that the Court remand the case for further investigation.**

Courts must remand cases where the VE failed to inform the ALJ of a discrepancy between his or her testimony and the DOT. *See Sanchez*, 329 F. Supp. 2d at 454 (remanding the case where the VE incorrectly denied any conflict between her testimony and the DOT because the omission "deprived the ALJ of an opportunity to . . . make a precise and informed decision in applying the medical evidence to the universe of jobs available in the economy"). Where remand is required because "the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004). Here, the record demonstrates that the ALJ inquired about a conflict between the VE's testimony and the DOT and the VE responded that there was no conflict. (Tr. 61.) Because the VE neither identified the conflict nor provided a reasonable explanation for the conflict, the record contains a gap regarding whether Plaintiff is capable of performing the jobs cited in the VE's testimony notwithstanding Plaintiff's limitation to jobs which do not require reading or writing in English for the performance of work tasks.

Accordingly, Plaintiff's case must be remanded for further development consistent with this opinion.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is granted to the extent that the case is remanded for further proceedings consistent with this opinion and the Commissioner's cross-motion is denied.

**SO ORDERED:**

Dated: Central Islip, New York
       August 24, 2018                       s/ Denis R. Hurley
                                                      Denis R. Hurley
                                                      United States District Judge